1905 American Council of Learned Societies v. National Endowment for the Humanities 1905You're welcome.ERIC WILKINSON Let's just wait for everybody to exit. Okay. Mr. Robinson.  Good morning, Your Honor. May it please the Court, John Robinson, on behalf of the appellants, the District Court erred in holding that three humanities organizations lack standing to challenge the wholesale elimination of 22 grant programs and three grant offices at the National Endowment for the Humanities. Plaintiffs and their members had received grants under these programs and offices in the past, and they intended to apply for grants under the programs in the future at the next opportunity. By eliminating these offices and programs at the National Endowment for the Humanities, the government deprived plaintiffs and their members of an opportunity to pursue a benefit from the federal government in terms of federal funding. Is there anything left at those two organizations that your clients, you know, intend to or would apply for? So the 22 grant programs have been eliminated entirely. So for example, there's a program called Dangers and Opportunities of Technology. Our client, the Modern Language Association, had spent 95 hours preparing a 19-page proposal for that program. They intended to apply in a matter of months, as soon as the application window opened, and now they can't because that program has been eliminated, and the offices... Let me bring you something slightly different. Let's say, let's put to a side the programs that were stripped out and no longer exist. Is there anything left at the National Endowment that your clients intend to or could apply for? I'm not aware of anything personally that they have applied to or intend to apply to. The National Endowment for the Humanities is, of course, still issuing grants. That's not the claim here. The claim is not that they've shut down the agency entirely. The claim is that they've shut down these programs. And a long series of cases, primarily in the D.C. Circuit, but in other courts as well, have held that the shutting down of a government program like that, when it deprives a plaintiff of an opportunity to benefit from that program, that does give you standing under Article 3. And I think the case most directly on point is the D.C. Circuit's case from 1989 in C.C. Distributors. So in that case, Federal contractors challenged DOD's elimination of a program that allowed the contractors to sell supplies to the Air Force. And the government argued, as the government argues here, that the contractors did not have standing because they had no right to that Federal contract and because they couldn't show that if the program were in place, that that they would have been awarded the contract. The D.C. Circuit said no, though, that that is sufficient for standing, it's sufficient to show a personal stake in the lawsuit. D.C. Circuit said a plaintiff suffers a constitutionally cognizable injury by the loss of an opportunity to pursue a benefit, even though the plaintiff may not be able to show that it was certain to receive that benefit. So I don't know. I'm not sure about that. So, like, so I get that case is it's an elimination of a program. So I'm going to bracket it for a second. Because most of the cases, there's an existing program, right? I don't know that it's most. And so it's about wanting to compete on the same terms that apply to everybody else in the existing program, right? We cited some cases like that, but we also cited some cases where it was an elimination of program entirely. So not just C.C. distributors, but just last year in the Global Health Council case.  It's like this impoundment case, and it's, like, weird if it's whether they have an obligation to spend or don't have an obligation to spend. I guess the way I think about it is the following, and maybe you can tell me if this is right. So when there's an existing program, it's not hard to see what that there's a concrete case or controversy, right? So if I apply to a grant program with the government, and the government says, no, you're not even eligible, they, like, stamp my application, like, ineligible or rejected or something. And I say, no, I am eligible, and then we have a fight over the terms on which people can compete. It's like I'm interacting with the counterparty. So there is a concrete case or controversy. When the government shuts down the program entirely, it's like I'm walking into a room with an application, and there's nobody there to receive it, right? There's no competition in which I could even submit an application. I'm not interacting with anybody. Usually when there isn't some, like, somebody's just not acting, we regard that as injury only if there's a duty on the part of the person to stand there, to be there, right? So I said, like, so wouldn't there have to be some kind of duty? So when we talk about private parties, we talk about, you know, duties of care, other duties in which they're required to respond to me. You know, historically, if you want to challenge government action unlawfully withheld, you know, you could meet, you could get rid of mandamus, but then that requires showing that there's a clear and indisputable right to the government action that's been withheld. You haven't said that you meet those standards. So why wouldn't that be how it works, that if there is no program, there's only, it's only a non-organizable injury if there's a very clear duty that the person has to be there to receive the application? So I see this difference that Your Honor is drawing between those two types of cases. I will say that difference is not borne out in the case law. The case law, even in the case law, the case law says is the touchstone of Article III standing is a personal stake, right? We care about whether the plaintiff has a grievance, has a concrete injury, has a sufficient personal stake in the litigation. And what the courts have said in cases like CC distributors, and not just CC distributors, case after case in the D.C. Circuit, the Teton Aviation case from 2015, the Coalition of Miso Transmission Customers case from 2022, the Global Health Council case from last year, is that even when the program is eliminated, that is a sufficient personal stake for Article III. But I know this is the next step, the next issue, but let's say the program has been eliminated. What's your remedy? What are you looking for? So this was an APA claim, so the relief that we're seeking is set aside and vacator of the final agency action under the APA. The government did not... Which action? So the action to eliminate the program and to rescind open notice of funding opportunities. So the government did not dispute below that those... You mean to put the program back into operation? Correct. So technically it would be vacator of the decision to eliminate, that would return things to the status quo ante, and in cases like the aviation, the Teton Aviation Historical Association that dealt with an auction... So reopen the offices, hire the people back who've been laid off, et cetera, et cetera? So we have, for purposes of the appeal, we have withdrawn our claims related to hiring personnel. Of course, if any agent determined that it were necessary to run a grant program to hire someone, they might choose to do that. But the relief that we would be seeking would be limited to the relief that's available under the Administrative Procedure Act, which is to vacate and set aside the final agency action to eliminate those programs. Why would that just be a bogey, what do you get out of that? Well, I mean, that would return things to the status quo ante, and what the status quo ante was for decades was that those programs were running, NEH was receiving hundreds of millions of dollars of appropriations from Congress every year to run those programs. It was giving out tens of millions of dollars a year. So you want to resurrect it and put it back to life? Yes. Now, of course, NEH could decide the day after an order vacating the decision that it's going to terminate for different reasons, to eliminate the program for different reasons. You would have to bring a new lawsuit then, I think. It's free to do that. But the question here is, do our clients have a sufficient personal stake to even bring their claims in this Court? And the district court erred in holding that they had just a generalized grievance like 99 points. But so what's the limits of this argument? So you're saying your clients wanted to, lost an opportunity to compete, and that's always a concrete injury, right? Yes. So you mentioned earlier that one of the programs was that the NEH is running a program about projects related to the dangers and opportunities of technology, right? Yes. You don't deny that the NEH can decide to have grant programs related to sort of technological issues or it could decide to have programs related to Russian literature, right? Of course it can, yes. Okay, so if they decide to do the technology one, and there just has never been a Russian literature one, and like a Russian literature professor comes along and says, well, I'd like to compete for a grant, and so I'm being denied the opportunity to compete. So therefore, I have suffered an injury by the NEH's decision not to have a program related to Russian literature. It's saying there would be an injury there and there would be standing. Yeah, so I mean, there are lots of limitations on the argument, right? So first of all, to have standing, you have to show that you're able and ready to apply. So someone couldn't just walk in and say, you know, I want to... That's fine. I mean, the Russian literature professor could say, I've applied for grants from other entities before. I'm very capable of applying for grants. It's a thing that I do. So that wouldn't be hard to me, right? Yeah. I mean, we don't... So the question is, you then have standing to sue the government over instituting a program that's never been contemplated before, that they just need to create? No. At that point, it looks a lot like, you know, a citizen attorney general sued or generalized grievance because you're just kind of policing the public policy choices of the government, right? So that's not our argument. I mean, these aren't plaintiffs who are saying you need to create this program, and that was a distinction that the Supreme Court thought was significant in DACA, right? So DACA, that wasn't so much as standing as the other issue that we've raised on appeal or committed to agency discretion. But in DACA, the court said the fact that DHS had established this program already and was eliminating it distinguished it from a case where someone's arguing, as Your Honor's alluding to, that we just want... Although in DACA, there were ongoing reliance interests. It wasn't like an opportunity to compete in something that doesn't exist going forward, right? They had already been given some kind of a benefit that was being undone. Right. But our clients certainly had reliance interests in these programs. This is what our clients do. But they don't have... They can't have reliance interests, right? Because you're only talking about an opportunity to compete. There was never a guarantee that they'd get anything. So that's not enough to create a reliance interest, which is why it's different. The plaintiffs who actually were awarded money, and that's not in this case, but that was part of the original case. They were awarded money, and then it's rescinded. Maybe there's a reliance interest there. But how could it possibly be a reliance interest on being able to compete for the possibility of a grant sometime in the future? This is what our clients do. This is real money to them. They have received large awards under these grant programs in the past. They apply for them every year. And honestly, there aren't that many organizations that do this. As we explained in our reply brief, a lot of these programs only receive 10 or 11 applications a year, and they award 9 or 10 grants. Those 9 or 10 grants go to our clients and their members, which are tens and thousands of historians and scholars at universities. So... You know, I don't know which way that cuts. I mean, you're saying that means that, like, these 12 people are entitled to have the government do that, but it might be a public policy choice to say, instead of serving the same 12 people every year, maybe we should have a different kind of grant program, right? That's for the agency to decide, right? Well, some of this gets to the merits, too. So remember, this is a motion to dismiss, and it's standing. And the district court said, I'm not even going to recognize loss of opportunity. No, I understand, but you were making that in terms of standing. You were saying, basically, because there's 12 people, they have a reliance interest, and that makes it a concrete injury. But I'm saying, I don't know. That seems like a policy choice as to whether to keep serving the same 12 people. To be clear, I don't think a reliance interest is necessary for Article III injury. I just think they have it here. And when... And again, so you think you have standing because? Because our clients, and the government has not disputed this, submitted declarations showing that they were able and ready to apply for these 22 grant programs. They had received hundreds of thousands of dollars in grants in the past, and they intended to apply in the future. Some of them had already applied for programs at the time the programs were eliminated. The American Historical Association had an application pending. I mean, so that... Is there a difference? Is that a line we should think about? Because there is a continuum here, right, of grants actually awarded, which, as Judge Menasci notes, is not before us, and create a new program that's never existed at the... Those are sort of the bookends, potentially. Here, even within the universe before us, we've got people who had... Were already in the application process versus people who hoped that this grant would be offered again in the future, and if so, would be ready, willing, and able to apply. Is there no difference between those in terms of their strength of their standing argument? Maybe in terms of strength. We think that all of them have. Well, I know you think they all have standing, but like, hypothetically, I could think that only one of those sets of people did. Because what I'm trying to get to here is the other side of what Judge Menasci is asking about, does the Russian literature program have to be created, is this idea that once the program is created, it must remain in perpetuity, and I'm... That seems like a strange position. So I would just urge the Court to adopt the standard that the D.C. Circuit has adopted in this context, which is able and ready to apply. So if a plaintiff can show that they are able to apply and ready, that is sufficient to challenge the elimination of a government program from which they receive a benefit. But able and ready to apply for what? Like I just said, the idea that I have a claim that you need to create a Russian literature program that never existed before, I could show I'm ready and able to apply for that program that's never before existed, but it's very weird to say that I'm injured by the fact that the government has never had a grant program in the Russian literature. Well, again, there are other... It's not even weird to say that I'm injured. Like I understand, like, I'd like to have something that doesn't exist, and like that is in some sense an injury. But, you know, that kind of intangible injury, we think about, like, when the law treats that as a real injury, and as I said, it's only when there's a very clear duty of the other person to do something for you. Yeah. So that is, again, not this case. The Court could have questions about that kind of hypothetical and still... Well, you're saying it's not this case, but I'm trying to get to the logic of your position. So as I said before, there is a distinction between fighting over the eligibility criteria for an existing program and arguing that you're harmed by a program that just does not exist. And so one argument, sort of, I see how it's limited to just concrete injuries where there is a concrete case or controversy, but your argument that whenever you're ready and able to apply for a program that is not being offered, you've suffered an injury, there's no stopping point, right? So, like, the logic of that means you can sue over a program that's never existed. Yeah. I mean, not to rehash what I said on reliance interests, but there are other, like, just disability doctrines that might prevent that type of claim. And then there's also, of course... What are those? Well, committed to agency discretion is at issue in this case, whether there's final agency action, whether someone's bringing a broad... Yeah, but those are all kinds of merits questions, right? So, like, it might be that you can sue to create a program that's never existed and you lose on the merits, but that's still, like, that's still inconsistent with what the Supreme Court has said about not allowing generalized grievances or citizen attorneys general. Like, it's not a merits question. That's a standing question. But I just don't see how this could be a generalized grievance when only a small, small percentage of the population is even possibly... I mean, like, so, for example, I looked at those FERC cases from the D.C. Circuit that we cite, and it seems like early on in the litigation, they said that that entity, whatever it is, the plaintiff, LSP Transmission Holdings, did not have standing when it didn't identify a specific project that it might be able to fulfill, right?  And so they said, well, we're being excluded from competition, and the D.C. Circuit says, well, maybe, but if there isn't a project on the table that you might be able to fulfill, then you look a lot like just a member of the public who, like, wants to do something, and you're not being allowed to do it, and it only becomes a concrete injury when there is something concrete that they could compete over. So why doesn't that distinction map onto this idea that when you're fighting over competing in an existing program, it's specific and concrete, and when you're talking about, like, I want you to create an opportunity to compete that didn't exist, that's more like a generalized grievance? I guess I don't want to fight too much about that hypothetical because, again, in our case, they weren't arguing that opportunities be created. They had concrete plans to apply for grant proposals, and to Your Honor's question about, you know, do they have a right in perpetuity to keep this program in place, no. NEH could say, tomorrow, we are terminating this program. Here are the reasons why. One, we want to, we think Russian literature is more important today than the prior administration. That's our first reason. And we think that the prior program was wasteful, was going to bad projects, and we've considered the reliance interests of people who rely on these programs, but we don't think they're sufficient. So did NEH say that this time? Didn't they decide that this was wasteful, and they don't want to pursue it? So we never got to that point because no administrative record was produced because the district court wanted to dismiss this on standing. So those are all arguments that would be available to the government once an administrative record is produced, once we see if there were any reasons. But why does it make sense? So you're just simply arguing about standing. That's it. You could lose on each of these issues. You may win, but you could lose on each of these issues in the district court. Right. Our clients just want their day in court. The district court said as a categorical matter, in my read of the opinion, that this loss of opportunity to compete is not cognizable because it's a generalized grievance. That is contrary to every other court to have addressed this legal issue. I don't know if that's right. Like I just said, the D.C. Circuit says in these cases that unless there's a specific thing you're competing over, it looks like a generalized grievance. Right? Isn't that what the district court here said? The people who actually were awarded grants and then lost them, they have a specific interest. People who are arguing over eligibility rules in an existing program, they have a concrete interest. It's only the people who, where there is no competition open to other people in general and want it to be reestablished or created, those are the generalized grievance. That seems to map on to what other circuits have said. I just don't know why it would matter to a plaintiff who's asked the question, why do you care about this case? Why do you care about this money? What's it to you? What's the personal stake? Which is, of course, the high-level standing questions, that it would matter to them whether a program was eliminated entirely or whether their application were denied within an existing program. Well, I don't know if it matters to them, but doesn't it matter to the law? Right? So, like, I could sue you for a breach of contract if we have a contract we have to provide services to me, right? But if I just have some, what if we don't have a contract, but I think you should provide services to me, I could sue you with that. And, like, if you ask me, I'd be upset that you're not providing the services. But we don't really have a controversy, right? Like, I haven't been injured by your failure to provide services unless there's a kind of duty formed by a contract or maybe a duty of care or something else, right? I mean, it's... So, like, that makes sense. Or, you know, in environmental cases, we say there's an aesthetic injury if the government is failing to maintain a public park or a lake or something that I visit on a regular basis. But if I say, you know, I'm injured because there's no lake here, and so therefore the government needs to create one, it's a different kind of claim that looks more like a generalized grievance that's not an injury, right? It's only concrete when there's a specific thing the government is maintaining or not maintaining. Just like in this case, there's an actual competition that you're fighting over the eligibility for. You're not, like, trying to create one that doesn't exist. No, but the lake is here, here. I mean, here, the programs had been in place in some cases for decades, and our clients had received benefits under the program. It's like, I mean, I don't know, sports analogy is like if I were, you know, a wide receiver who ran a 4-4 and they canceled the NFL draft one year, they canceled it for everyone. I mean, do I care that they shut off that program to everyone? Sure I do. I mean, I had a personal stake. Tell me again what you think on this particular issue victory would look like for you. So we would ask that the court reverse the district court's dismissal of these claims, and then on victory, we would seek an order vacating and setting aside NEH's decision to eliminate these programs. That's it. Then what? So then we would return to the status quo. NEH might continue to administer the programs as they had before, which we expect would result in our clients receiving grant funds, and which other agencies have done in other cases where courts have vacated decisions to terminate grants or terminate grant programs. NEH could, as I alluded to earlier, decide to reterminate the programs. It would need to provide reasons in doing so. That would be up to their discretion. But all we're seeking is an order vacating and setting aside what we think is arbitrary and capricious agency action. Thank you very much. If the agency would turn around and eliminate the program, then what would the merits proceedings look like? The government would produce an administrative record, which would contain the information that the decisionmaker considered in deciding to eliminate these programs. We would then argue over whether the decision was arbitrary and capricious. So as Your Honor might know from cases like New York v. Department of Commerce, the DACA case, the government is supposed to consider reliance interests, is supposed to explain its reasoning, is supposed to consider congressionally, you know, purposes that Congress has said the agency should consider. We would argue over whether the agency— Does the DAA actually do that every time it does—it creates or eliminates a grant program? There's like a complete administrative record, and then there's a litigation over whether they should have it or not have it? So like most agency actions that are challenged in court, it's not as though the administrative record is produced—is compiled contemporaneously with the decision. It's compiled post hoc by like the litigators, so they would go to the decisionmaker and say what did you— Well, if it's a conventional thing that's subject to rulemaking— Right. —or an application or something, it is— No. —it is compiled contemporaneously. So that's different. Formal rulemaking— I'm not sure what the regular practice is. I mean, agencies open and close grant programs all the time, and you're sort of saying that there can be a litigation over whether they should have the Russian literature program or the technology program. Right. So I don't know for sure every agency— I mean, pretty much, you know, several—several agencies in this administration have had this, have had litigation over it. Those cases are bubbling up in the courts. I think the Global Health Council case from last year in the D.C. Circuit is very helpful, especially on the standing issue. To Your Honor's question— So what are the standards by which you judge whether they should have the technology program or the—or the Russian literature program? I think it would be the same as in any arbitrary and capricious standard. You would say has the agency explained its decision for taking this final agency action? Has it considered the factors that it's supposed to consider? And if it has, then it should be considered.      And if it has, then it should be considered.    standards, including reliance interests. For less formal agency actions, a court might think it doesn't need to have a formal, you know, hundred-page rule in the Federal Register. We certainly would not expect to see that. But there's more formal agency actions that would have that, less formal agency actions. You still produce an administrative record. It might be a five-page decision memo from a senior staffer at NEH to the chairman saying, I recommend—this is just me speculating—I recommend eliminating these 22 programs because we think they're wasteful. That might be it. We don't know. We haven't gotten to that point of the case yet. And are they allowed to eliminate something because it's wasteful? I mean, it would depend on the case-by-case, but that's certainly a valid—one valid factor for the agency to consider, absolutely. Where would that come from? Like, what's the source of law about that? It's the Administrative Procedure Act is—requires agency— So it's being an arbitrary and capricious if it's not really wasteful or something? I think if— It would lack substantial evidence if, like, a court thought that it was not a wasteful program but was worthwhile. I don't know.        I think if the agencies offered reasons were pretextual, like as in the census case, then that would be a basis for vacating and setting aside, but— Okay. Well, thank you very much, Mr. Robinson. Thank you. You've reserved time for rebuttal, so we'll hear from you again. Ms. Brennan—we'll hear from the government. Ms. Brennan. Thank you. Good morning, Your Honors, and may it please the Court. Mary Ellen Brennan from the U.S. Attorney's Office. The core question in this appeal is whether a plaintiff can sue a Federal agency to require it to structure its programs and offices in a particular way. The answer is no, because no person has a concrete, legally protected interest in how an agency manages its internal structure. Then who can challenge, or how can an agency's decision be challenged? Let's hypothetically pretend that the basis—let's go to the Russian literature grant, right? So that the folks in charge at NEH say, we're going to do away with all of these existing grants. We're going to put into place 30 new grants that are about Russian history and literature because—and the reason is my family's really into Russian literature. It's entirely a personal matter, or God forbid, someone paid me, you know, under the table to make sure. There's some really wrong reason for doing this. Who can challenge that? Just to be clear, Your Honor, when you say do away with existing grants, do you mean— No, the programs. I'm sorry. Okay. I understand that we are not talking about terminated grants here. We're talking about grant programs, and they say instead of these 30 grant programs, we're going to have 30 new programs that all relate to Russian history and literature. Right. And so we—that's all we know, right? That's all we know from the outside. But nobody can challenge that, and so we never find out what the basis for that was, and we never find out, was it arbitrary and capricious or self-interested or problematic in some other way? Well, I think, Your Honor, that what Judge Menasche was saying before about an injury needing to have some sort of duty or an allegation that there's a right to government action is part of the issue here that— Well, that is part of it. But actually, the example that Judge Menasche gave had to do with you have to have an existing contract when, in fact, plenty of cases are brought by people who say, I would like this business to enter into a contract with me, and it has refused, right? And it has refused for a nefarious reason or an improper reason or an unconstitutional reason. So— Yes, Your Honor. And I think that would be a different case, and— So, but we don't know the reason here. That's what I'm trying to get to, is how do we ever find out whether the reason was problematic, unlawful, arbitrary, and capricious if we don't—if nobody can challenge it? But the plaintiffs here aren't saying, I applied for this grant, and the agency has rejected my application for some reason about a protected characteristic or something like that. What plaintiffs are saying is, because I want to apply for a grant on this topic, on archaeology, I have standing to challenge the fact that the government has decided to offer a program this year in Russian literature, and that has— Well, suppose the reason for terminating these grants, these grant programs, was that the ACLS didn't have a sufficient number of Christians working there. Could they challenge that? Yes. I think that would be a very different case. Sorry. It's a hypothetical. When I say yes, I would depend, but I— It's a hypothetical. Yeah, I'm not saying definitely yes without knowing the facts, but I think that would be a different situation than what— Of course it would. But could the ACLS challenge that? So in the hypothetical, it would be that they're— The only thing that changed is that a memo got leaked that said, we are just terminating all these programs because the Modern Languages Association and the ACLS don't have enough Christians getting grants and working in their organizations. I think if the plaintiffs bringing the challenge were alleging that they were subject to some sort of discrimination, then that would— My hypothetical. Then that would, yes, be a better case for standing. Does the ACLS have standing under that circumstance? If the plaintiffs under the—yeah, if the ACLS under that circumstance alleged that they were the—being injured by the discrimination, I think then that would be a better case for standing than this. And the reason— Would they have standing? I mean, I would need to know the exact circumstances of the case, but I think— My hypothetical. What are the exact circumstances? So you're saying that the ACLS would say, we are Christians and the— You don't have enough Christians working at these organizations. Let's eliminate the programs. Oh, so you're saying that the agency would be eliminating programs that would— Same situation we're dealing with here, except it has turned out that the motive for the elimination is what I just put to you in the hypothetical. Would they have standing? And the plaintiffs are alleging that they are targets of the discriminatory motive somehow? Yeah. Yes, then I think that—again, it's hard to say with a pure hypothetical, but I think that that would be—they may have standing. They probably would have standing in that case. Why? Because they would have a concrete injury based on some sort of protected interest, which is— What would the concrete injury be? That they were being discriminated against. There would be something recognized in the law that protects them, whereas in this case, if we step back, what plaintiffs are saying is that they, you know, either applied or were interested in applying for grant programs that they were interested in. And as a result, because of that, that alone gives them standing to essentially seek an injunction that tells the agency how it has to structure itself. So the Supreme Court in TransUnion says that when you have an intangible injury, the question about whether it's concrete turns on whether it's the kind of injury that historically has been considered cognizable at common law or is specified by the Constitution, right? Yes. So if, in fact, an agency said that we are eliminating a grant program because all of the possible grantees are insufficiently, you know, one religion and we prefer another religion, and then the plaintiffs claim that their injury is discrimination against them, that would be a harm specified by the Constitution, right? Yes, Your Honor. So if they were saying that, then maybe that kind of intangible harm, that kind of stigmatic injury or discrimination, that's an injury specified by the Constitution. Exactly. But if they're saying there just is no opportunity to compete for anybody and we think there should be, the question is, is there some kind of a duty that's owed to them that, you know, was historically recognized as an injury or specified by the Constitution? And the plaintiffs here haven't identified such a thing. Yes, exactly, Your Honor. What if the hypothetical, though, goes to, and I don't want to stretch it too far, but so if we take out the idea of discriminating against the grant applicants directly, but instead the agency says, you know what, we're not interested in Russian literature because we don't like Russia. We've decided we don't like Russia, and so we're no longer interested in Russian literature. We don't care who gets the grants or doesn't get the grants, but we are making a choice that we just think, you know, we think that anything about Russian heritage is bad and it's the viewpoint. These grants allow people to say nice things about Russia, and so we don't want them anymore. That's a viewpoint-based decision. And so they eliminate the program, not because of who's getting the grant, but because of the nature of the grant. The people who were ready to get those grants or were expecting to or hoping to get those grants, do those people have standing? Now they're not targeted as an individual applicant, but the nature of the program is being targeted. What I'm trying to get to is if we stop everything at standing, who can ever challenge a decision, even if there's a leaked memo? How are we going to find out what's going on? I think it depends on the nature of the claim. But if, you know, as Judge Menasche was alluding to, if the plaintiffs had a claim that's rooted in a constitution or some sort of — But if they don't know. So it's rooted in the APA, which is their allegation is the decision to terminate these programs is arbitrary and capricious. And that is a statutory claim. So the difference is that it has to be a constitutional claim. So if they said, and we think on information and belief that it's viewpoint discriminatory, that would be enough? I'm not saying it has to be a constitutional claim, but I'm saying that the plaintiffs who are bringing the suit have to have some sort of interest or some sort of alleged — I think before Judge Menasche said they have to allege some sort of right to government action that's recognized in the law. How do agencies make decisions in compliance with the APA? Well, that doesn't mean that a plaintiff can challenge anything that the — any internal decisions the agency makes about its structure. I mean, does a plaintiff have standing because they're alleging that the government is acting not in accordance with law? Isn't that a generalized grievance? If there's one thing we know, you cannot say that you have a concrete injury because the government is not acting in accordance with the law, right? Yes. So we know that you do not have standing just because you say the government is not complying with the APA or some other statute. Yes, Your Honor. Right. So you can have an injury specified by the Constitution, but it has to be a concrete injury to the particular plaintiff. Otherwise, you'd have a citizen attorney general suit or a generalized grievance. Yes. Thank you. And if an administration just doesn't like Russian literature, then maybe the voters will vote for one that does if they care about that. But it doesn't mean that everything can come into a courtroom. Yes, that's exactly right. Well, I'm an organization like the Modern Language Association or the ACLS. Last year I got 50 grants totaling $125 million. The year before, I got 48 grants totaling about the same, and on and on, back for the last 10 years. And then all of a sudden the government says, so sorry, goodbye. What is their opportunity to challenge the decision? To cancel a particular program? I think if they're— Are they just out of luck? They've got to close up this operation and go do something else? If their claim is simply based on the fact that they have an interest in this particular program and that program is— The claim is the one that is embedded in the hypothetical I just asked. And I was clarifying the hypothetical, that you're saying that— What? I was just clarifying the hypothetical, that you're saying that they—it's simply that they had applied for that grant program in the past and they want to apply again. So they're suing— The hypothetical suggested a reliance interest. They've been doing this for the past 10 years, 20 years, whatever, and got these grants. Right. No, we would argue that they don't have standing, Your Honor. Because— 10 years are terminated or gone. And there's no reason whatsoever to think that they would not have re-opted the programs that are still operating. And there's no reason at all to think that they wouldn't have gotten them because they've gotten them in the past. It's your position that they have no recourse? Under your hypothetical, they wouldn't have standing because they don't have a legally protected—sorry, yeah, a legally protected interest in the precise programming that the government offers. That's something that it just isn't judicially cognizable. So they believe that they're out of luck? Yes, and just to step back— There's no remedy under the hypothetical I put to you. Is that the government's position? Just with the bare—what's in the bare hypothetical, I would say yes. We would say they don't have standing. And to step back, I'll just note that you mentioned a program that has existed for 15 years, but the agency's programming and office structure have always been dynamic. They haven't been set in stone for years. The agency has— Was there any period in time when you weren't heavily supporting the ACLS? I don't know, Your Honor, but— I was trying to figure out when you said dynamic what you were referring to. What I'm saying is that the agency typically adds new programs, gets rid of old ones, and has changed its office structure. We provided a few recent examples of programs that were added over the past few years in footnote 7 of our brief. We also have a discussion of the— You're not seriously suggesting that the elimination of the programs that are part of this litigation are just some sort of incidental calling, are you? Sorry, could you repeat that, Your Honor? I'm reverting to the change that you discussed in the footnote that you just referenced. You aren't saying that the changes that impacted the ACLS are like those, are you? There were certainly more changes in 2025 than maybe there have been in the average year, but what I'm saying is that even for some of the programs that were terminated that the ACLS is challenging were programs that came into being in the past few years. One of them started in January 2025. In the McDonald Declaration on pages 546 to 548 of the record, it discusses some of the changes that have happened historically, but it also talks about how in 2025 the agency eliminated a number of programs, it carried over certain programs, and it created new programs. The agency in terms of its scope of operation has been drastically cut back, right? These aren't new. Isn't that right? I don't know that that's true, Your Honor. The agency is still operating. In footnote three of our briefs— What's the headcount now? I don't know the headcount now. The headcount is certainly smaller than it was. Do you know what the headcount was before the changes that this litigation involved? I don't know the differences in headcount, but it's definitely a difference, and it's certainly a lot smaller headcount than it was before. But the agency is administering grants. It currently has grant programs that are open for applications now, and in footnote three of the brief, it notes that the agency has awarded a good amount of money for grants over the past year or so, Your Honor. What we are saying here is that what plaintiffs are doing with this claim is that they are taking the fact that some plaintiffs want to apply for specific niche programs, and they are leveraging that to claim that they have standing to challenge the agency's entire organizational structure and slate of programs. And that's just not something that is appropriate for judicial review, and they don't have standing to bring the type of claim that they're bringing. In the last 20 years, somebody at my income level has been taxed at a certain rate, and I've ordered my affairs to pay that amount of taxes, and that's how my life is run, and so on. And then Congress changes the tax rate. Have I suffered an injury that I could sue the government over? I could seek to join the IRS for enforcing the new rates? No, Your Honor. Because I'm not entitled to any particular kind of tax rate, right? Yes, exactly. So it's not really an injury to me. Yes. So if we were to get to the merits of, let's say, somebody had standing and you could have an APA action about any niche programs, it might be that it's arbitrary and capricious not to consider the effect on the higher education industry or something. That might be a factor it has to consider, right? But does that mean that everybody involved in the higher education industry has a concrete injury? Just the, like, interest that you have to consider when you're evaluating an agency action does not mean that everybody impacted has standing for the three purposes, right? Exactly, Your Honor. That is our argument here. Yes. Okay. Thank you very much. Ms. Brennan, we'll turn back to Mr. Robinson on refutal. Okay. Thank you. Thank you, Your Honor. Can I ask you a logistical question, and I'll give you the extra time at the end, or I'll ask Judge Menasche in his courtesy to give you this time because I have a logistical question. It looks to me like what we have on appeal now is at least parts of counts 1, 2, and 5. I have this written down, if you don't mind. That'd be great. Thank you. I just want to make sure that we're looking at the right bits and pieces. So to be clear, the claims at issue on appeal are institutional claims. By my count, those are implicated by counts 1, 2, 5. Oh, yes, 1, 2, and 5. Is that what Your Honor said? Yes. Yes, that's exactly right. All right. Thank you. We're primarily pressing our arbitrary and capricious claim, which is count 5, but yes. Yes, and I appreciate the leeway there, Judge Menasche. Three quick points. First, nowhere in the government's briefs, nowhere today did the government cite a single case where a court has held that the loss of an opportunity to compete for a government benefit like the benefits here is not a cognizable Article III injury. So I really think this Court would be creating a circuit split with at least the D.C. Circuit, if it were to affirm the district court's holding that that is not a cognizable Article III injury. Second point, just to be clear, our injury is not, you know, we are not alleging as our injury that the government has an obligation to comply with the law. The injury is money. The injury is our clients with funding to support their admissions. No, but it's not money, right? It's an opportunity to compete for money, right? Right. But that's the same in any case where you are business competing for money, where you're applying for something. It's the same in an example of someone applying to admissions for a university who might not be able to show that they'd be admitted to the university. All right, so we know that, right? So like Jennifer Grass does not have to show that she would be admitted to the University of Michigan Law School in order to have standing to get a fair admission process, right? So she just has to say, I'm entitled to be considered on the merits and have a fair opportunity to compete, right? And on equal terms with everybody else not to be subjected to discrimination, right? So she can sue the University of Michigan over its admission process because she's deterred from applying because of the unfair criteria. Right. If Michigan did not have a law school, could she sue the state of Michigan and say, I've been deprived of an opportunity to compete for admission to a law school, therefore Michigan needs to create a public law school that would then consider my application? No, I mean I think that would be an attenuated injury. You'd have to say that – Okay, so let's say they shut down an existing law school and she was ready and able to apply, but they shut it down. Could you sue the state of Michigan and say you need to reopen the law school in Michigan? I think potentially that individual would have standing. There might be lots and lots of other reasons why that person wouldn't succeed and would want to know more about the facts. But the facts in this case just fall so squarely in what the dean – I meant to sort of parallel these facts, right? Okay, so like Michigan had a law school. She spent 90 hours preparing an application, whatever. She was ready to apply. Then the state of Michigan announced that they were shutting down the law school. So there was no admission process. So it's not even that the injury would be a lack of opportunity to compete on fair terms with everybody else. It's like you don't get an opportunity to compete at all, which is how you're describing your injury. So she'd be able to sue the state of Michigan and say you need to reverse the decision to shut down the law school, right? I mean, assuming she was able to show that she was able and ready to apply, assuming the other justiciability requirements were met, I mean, she does sound like someone like Gratz who wants a seat at the university and if they made a decision that that was unlawful, which you have to assume for purposes of standing, right? You have to assume that the decision here was arbitrary and capricious or you have to assume in that case that it violated some source of law. I'm not sure what that would be. So let me ask you this. Just to return for a minute to a topic that you and I were colloquying about during your argument in chief. Let's say you get back to the district court. You have standings. What would a victory in the district court look like? I mean you can't get money damages, can you? Because there's no contract that guaranteed you a specific amount of money. There is no benefit that you had a legal right to that was taken away from you. What would victory look like? What are you looking for in the district court? So we would get an order setting aside the agency's decision eliminating these programs. We would then have the opportunity to compete for grants under those programs. The agency would be restored. And your argument that it had to be set aside would be what? That the decision was arbitrary and capricious. We do have some other claims, but the one we focused on on appeal and today is the arbitrary and capricious claim. And what kind of proof would you order or would you offer up in support of that? So it would be the government's burden to produce an administrative record showing the information that the decision maker relied upon in making this decision. We would review that administrative record. And then we would argue with the government over whether that decision was arbitrary and capricious. Just like in the census case, just like in the DACA case, both of those cases, the Supreme Court ultimately said those decisions were arbitrary and capricious, vacated those agency actions. That's exactly the same relief we'd be seeking here. And you might win. You might lose. Yes. Okay. Thank you. I would ask the Court to reverse. Thank you. Okay. Thank you very much, Mr. Robinson. The case is submitted.